JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Hershel White ("White") appeals from his conviction received in the Cuyahoga County Court of Common Pleas. White argues the State did not support his conviction with sufficient evidence, the trial court erred when it admitted evidence, and the trial court erred when it dismissed a juror during voir dire. For the following reasons, we vacate the judgment of the trial court.
 {¶ 2} At the time of trial, White was a forty-three-year-old father of four and the step-father of three additional children. White was also an eighteen-year employee of the City of Cleveland, Division of Waste Management. From 1988 to 1992, White served as a laborer, or waste collector. From 1992 until his trial date, White worked as a foreperson. In his capacity as a foreperson, White oversaw approximately eight drivers and fifteen laborers. White was also responsible for writing-up and reporting employee misconduct.
 {¶ 3} During the summer of 2005, the Director of Public Service received a letter from Delaney Adams ("Adams"), an employee of the Department of Waste Collection, concerning harassment and money-lending activities by White, his supervisor. Cleveland Police Detective Joseph Billups ("Detective Billups") received the case and began his investigation. Detective Billups first questioned Adams and through him, learned of other possible victims. Specifically, Detective Billups received the names of Malcolm Wolfe, Gentry Tillman, Kendrick Smith, and James Luccio. Detective Billups interviewed and took written statements from each *Page 4 
individual. Detective Billups took this information to the grand jury and on December 1, 2005, the grand jury returned an indictment charging White with one count of criminally usurious transactions. However, the State dismissed the case on October 25, 2006.
 {¶ 4} The State went to the grand jury a second time and on June 9, 2006, the grand jury returned an indictment charging White with three counts of criminally usurious transactions.
 {¶ 5} White pleaded not guilty and elected to try his case to a jury. At trial, Malcolm Wolfe ("Wolfe) testified he worked in the Division of Waste Management for over eighteen years and that he worked with White. Approximately three years earlier, Wolfe borrowed $100 from White, and he later paid the $100 plus "10 or 20, whatever, 30." (Tr. 183.) Later, after the State of Ohio ("State") confronted Wolfe with his statement to Detective Billups, Wolfe explained that he paid White an additional $50. Wolfe explained that White never demanded any amount of interest and specifically stated "he didn't put a gun to my head." (Tr. 195.) Wolfe also testified he borrowed money from White a few other times and that at one point, he owed White approximately $500. Wolfe also stated that White kept a small book that appeared to be a business record of some sort.
 {¶ 6} James Luccio ("Luccio") testified that he worked at the Division of Waste Management for twenty-six years, and he too, worked with White. Luccio explained he borrowed money from White on three occasions and that he borrowed *Page 5 
anywhere from $25 to $100. Luccio recalled that when he borrowed the $100, he had to pay White $125 in return. Additionally, Luccio recalled one occasion when White told him if he did not pay him back on time, the amount he owed would double.
 {¶ 7} Romundus Wright ("Wright) testified that he worked under White for approximately five years. However, in 2005, Wright was transferred to another location under different supervision because of a physical altercation between himself and White. Wright testified that although he never borrowed money from White, he observed White loaning money to other people, including Wolfe, Adams, and Kendrick Smith. Wright also testified that he observed White keep a tablet of employees' names and how much they owed. Additionally, Wright testified that he observed White drive employees to cash their checks to ensure he was paid back. However, on cross-examination, Wright testified he never actually saw where White or other employees drove, he only saw them leave together.
 {¶ 8} Wright testified that he knew about White's money-lending activities for the two years up to 2005. During that time period, Wright heard White talking about people who owed him money and what he was going to do if they didn't pay him back.
 {¶ 9} Wayne Thornton ("Thornton") was White's immediate supervisor with the Division of Waste Management. Thornton testified that he supervised White from 1996 through the date of trial. As the supervisor to the foreperson, Thornton *Page 6 
would mediate disputes between an employee and his or her foreperson. In addition, Thornton would review writeups against laborers.
 {¶ 10} During trial, Thornton testified that he believed White made an unusual amount of writeups, especially concerning Smith and Adams. Neither Smith nor Adams worked for the Division of Waste Management any longer, and neither individual testified for the State. In addition, several employees came to Thornton with complaints that the writeups were unwarranted and were the result of outstanding debts owed to White. As a result of these complaints, Thornton held several disciplinary hearings.
 {¶ 11} Alfred Avant ("Avant") testified that he is the general superintendent for the Department of Waste Collection. Prior to that position, he was the assistant superintendent at the station where White was the foreperson. Avant testified that he evaluated the writeups by White against certain employees and found many, but not all, to be unjustified. Avant confronted White about the accusations and wrote him up for loaning money to several employees. White admitted to Avant that he loaned employees "a dollar or two." (Tr. 300.)
 {¶ 12} After hearing all of the evidence, the jury found White guilty of all three counts as charged in the indictment. On October 30, 2006, the trial court sentenced White to one year of community controlled service, thirty days in the county jail, and ordered White to resign from his job with the City of Cleveland. White appeals, raising the four assignments of error contained in the appendix to this opinion. *Page 7 
 {¶ 13} In his first assignment of error, White argues that his convictions are based on insufficient evidence. For the following reasons, we agree.
 {¶ 14} The standard of review with regard to the sufficiency of the evidence is set forth in State v. Bridgeman (1978), 55 Ohio St.2d 261, as follows:
 "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
 {¶ 15} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, in which the Ohio Supreme Court held:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citation omitted.)
 {¶ 16} The indictment charged White with three counts of criminally usurious transactions. R.C. 2905.22 defines the crime of "extortionate extension of credit; criminal usury" as follows:
 "(A) No person shall:
 "(2) Knowingly engage in criminal usury * * *." *Page 8 
 "`Criminal usury' means illegally charging, taking, or receiving any money or other property as interest on an extension of credit at a rate exceeding twenty-five per cent per annum or equivalent rate for a longer or shorter period, unless either: (1) The rate of interest is otherwise authorized by law; (2) The creditor and the debtor, or all the creditors and all the debtors are members of the same immediate family." R.C. 2905.21(H).
 {¶ 17} During trial, Wolfe testified that he borrowed $100, and when he returned the money, he paid an additional $50 or any specific amount. Although the State uses the word "required" in their argument, that was not the language used by Wolfe. Wolfe testified that White never forced him or specifically ordered him to pay an additional $50. Wolfe claimed that he paid back the additional $50 on his own, not because of any demand made by White. In addition, Wolfe admitted that after borrowing money from White, he ended up owing approximately $500. However, Wolfe did not testify that interest was used by White in calculating the $500 debt. Therefore his testimony leaves this court with an unclear picture of whether Wolfe borrowed $500, or whether he borrowed less and through interest applied by White, ended up owing $500. Wolfe merely stated that after he paid back the $500, he never borrowed money from White again. *Page 9 
 {¶ 18} Wolfe's testimony cannot be used to support a conviction for criminal usury. Wolfe never testified that White charged an excessive amount of interest, in fact, Wolfe denied that White charged any interest at all. In addition, Wolfe never testified to any term of the loan. Criminal usury means "illegally charging * * * money * * * as interest on an extension of credit at a rate exceeding twenty-five per cent per annum or equivalent rate for a longer or shorter period." R.C.2905.21(H). Wolfe never testified to the term of the loan and, therefore, his testimony is insufficient to support any charge of usury.
 {¶ 19} The State also supplied the testimony of Luccio, who testified that when he borrowed $100, he had to pay White $125. Luccio did not testify to when this money was due. Although this is a high rate of interest, it is not in excess of twenty-five percent if it was paid back in one year. White also told Luccio that if he did not pay back the amount on time, the amount owed would double. However, Luccio never explained when this money was due and White never collected on this double amount. As such, White never actually charged an excessive amount of interest as defined by R.C. 2905.21(H). This evidence does not establish that White committed the crime of criminal usury.
 {¶ 20} Even after viewing the evidence in the light most favorable to the prosecution, we conclude that the State did not support White's conviction for criminal usury with sufficient evidence. The testimony supplied by Wolfe and Luccio never established that White charged interest in excess of twenty-five percent for a *Page 10 
specified term, as is required to establish the crime of criminal usury. We therefore conclude that reasonable minds could not have arrived at the conclusion reached by the trier of fact. See State v.Dennis, 79 Ohio St.3d 421, 1997-Ohio-372. Accordingly, we sustain White's first assignment of error. The judgment of the trial court denying White's Crim.R. 29 motion is reversed, White's conviction and sentence are vacated.
 {¶ 21} Our analysis of White's first assignment of error is dispositive of his appeal. We therefore find White's remaining assignments of error moot.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE JR., P.J., and CHRISTINE T. MCMONAGLE, J., CONCUR.
 Appendix A
Assignments of Error: "I. The underlying convictions are based on insufficient evidence. *Page 11 
 II. The trial court erred in allowing numerous incidents of hearsay before the jury in violation of appellant's Sixth Amendment right to confrontation.
 III. The trial court erred in allowing the jurors to hear and consider irrelevant and prejudicial other acts testimony.
 IV. The trial court erred in excusing juror No. 13 for cause where the record failed to show the juror was disqualified from serving and the court failed to question whether the jurors rights had been restored." *Page 1